IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RODNEY S. LANOSA ) | CIV. NO. 07-00115 ACK/BMK |
| ) | |
| Petitioner, ) | FINDING AND |
| ) | RECOMMENDATION THAT |
| vs. ) | PETITION FOR HABEAS CORPUS |
| ) | BE GRANTED IN PART AND |
| CLAYTON FRANK, Interim ) | DENIED IN PART |
| Director, Department of Public ) | |
| Safety, State of Hawaii; ROBERT ) | |
| PARKER, Warden, Tallahatchie ) | |
| County Correctional Facility; and ) | |
| MARK J. BENNETT, Attorney ) | |
| General, State of Hawaii, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

FINDING AND RECOMMENDATION THAT PETITION FOR HABEAS
CORPUS BE GRANTED IN PART AND DENIED IN PART

On March 5, 2007, Petitioner Rodney S. Lanosa ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. After careful consideration of the petition and all other filings, the Court hereby FINDS and RECOMMENDS that the petition for habeas corpus be GRANTED IN PART and DENIED IN PART and that Petitioner be resentenced.

BACKGROUND AND PROCEDURAL HISTORY

On May 21, 2001, Maui County Police Department ("MPD") arrested Petitioner while he was sitting in a stolen vehicle. (Answer, Ex. I, 186.) At around

7:30 A.M. on May 22, 2001, MPD Detective David Silva ("Silva") initiated Petitioner's first interrogation in his holding cell. (Petr's Mem. ("PM") 2.) Silva handed MPD Form 103 to Petitioner and read his <u>Miranda</u> rights aloud. (PM 2.) Form 103 contains three sections. The first section warns a person of his or her <u>Miranda</u> rights; the second section requests the person to acknowledge that he or she understands those rights; and the third section contains a waiver of rights that reads:

> I am willing to make a statement and answer questions without talking to a lawyer or having a lawyer present. No promises or threats have been made to me and no pressure of any kind has been used against me. I understand that I still have the right to not answer questions, and to ask for a lawyer at any time.

(Answer, App. C.)

At 7:50 A.M., Petitioner signed the second section of Form 103 acknowledging that he understood his rights. (PM 2.) Petitioner then said he did not want to talk, so Silva wrote "Refused" in the waiver section. (Answer, Ex. I, 141, 143.) Although Silva intended to question Petitioner about the stolen vehicle, he ended the interrogation after Petitioner refused to waive his rights. (PM 3.) After Silva stepped out, he overheard MPD Detective Derek Lee ("Lee") discussing a separate investigation. Silva informed Lee that Petitioner might fit the

description of the suspect he was looking for in connection with various sexual assaults and burglaries. (Answer, Ex. I, 144.)

At 8:00 A.M., ten minutes after the first interrogation, Lee moved Petitioner to another room and started an interrogation about the sexual assaults and burglaries. Silva was also present during the second interrogation. (PM 3.) Lee gave Petitioner a new copy of Form 103 and informed him of his <u>Miranda</u> rights. (PM 3.) At 8:12 A.M., Petitioner signed the second section indicating that he understood his rights; at 8:40 A.M., he signed the waiver portion of Form 103. (Answer, App. C.) In a Voluntariness Hearing held on November 8, 2002, the state court found that there was no evidence of threats or mistreatment that could have coerced Petitioner into waiving his rights during the second interrogation. (Answer, App. B, 99.) After Petitioner waived his rights at 8:40 A.M., he offered the detectives no information and asked if he could return to his cell to think. Lee granted that request and ended the second interrogation. (Answer, Ex. H, 111.)

At 10:40 A.M., MPD Detective Mervin Holokai ("Holokai") brought Petitioner out of his cell in order to question him about a burglary at Kamehameha Schools. (Answer 7.) Before Holokai could begin questioning, Lee found Petitioner and initiated a third interrogation. (Answer 7.) Lee showed Petitioner the copy of Form 103 that he had signed and waived at 8:40 A.M., informed

3

Petitioner of his <u>Miranda</u> rights again, and asked if Petitioner was willing to talk. (Answer 7.)  Petitioner indicated he was willing to talk and proceeded to fill out MPD Form 127, a form for written voluntary statements.  (Answer 7.)  At 10:50 A.M., Petitioner signed Form 127 and began his first statement in response to Lee's questions about the sexual assaults and burglaries.  (Answer, Ex. D.)  At 12:30 P.M., Petitioner agreed to take the detectives to the crime scenes.  (Answer 8.)  Upon returning to the station at 2:00 P.M., Petitioner provided more statements after waiving his <u>Miranda</u> rights again.  (Answer 9.)

On January 17, 2003, a jury in the Circuit Court of the Second Circuit of the State of Hawaii convicted Petitioner of the following offenses:  three counts of first-degree burglary in violation of Hawaii Revised Statute ("H.R.S.") § 708-810(1)(c) (Counts I, V, and VII), one count of fourth-degree theft in violation of H.R.S. § 708-833(1) (Count IV), one count of first-degree robbery in violation of H.R.S. § 708-840(1)(a) (Count VIII), three counts of attempted first-degree sexual assault in violation of H.R.S. §§ 705-500, 707-730(1)(a) (Counts II, VI, and IX), one count of first-degree sexual assault in violation of H.R.S. § 707-730(1)(a) (Count X), and two counts of kidnaping in violation of H.R.S. § 707-720(1)(d) (Counts III and XI).  Petitioner was sentenced to extended-term sentences of life for Counts II, VI, and X, ordinary-term sentences of twenty years for Counts VIII,

IX, and XI, ordinary-term sentences of ten years for Counts I, III, V, and VII, and an ordinary-term sentence of thirty days for Count IV, to be served concurrently.

On February 12, 2003, Petitioner filed a Notice of Appeal and argued to the Hawaii Supreme Court that (1) the introduction of his confession at trial violated his right against self-incrimination under the Fifth and Fourteenth Amendments, (2) his right to a fair and impartial jury under the Sixth and Fourteenth Amendments was violated, and (3) the imposition of extended-term sentencing was unconstitutional.  On March 10, 2006, the Hawaii Supreme Court issued a Summary Disposition Order affirming the trial court's judgment.

On March 5, 2007, Petitioner filed the present Petition for Habeas Corpus Relief under 28 U.S.C. § 2254, asserting the following grounds for relief: (1) the introduction of Petitioner's statement to police at trial violated the Fifth and Fourteenth Amendments, and (2) the imposition of extended-term sentences was unconstitutional.

## LEGAL STANDARD

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed to be correct and may only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Additionally a petition for a writ of habeas corpus shall not be granted unless it appears that the applicant has exhausted all available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective. 28 U.S.C. § 2254 (b)(1); see also Rose v. Lundy, 455 U.S. 509, 522 (1982).

## DISCUSSION

I. VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS

Petitioner argues that his statements may not be introduced at trial because his Fifth and Fourteenth Amendment rights were violated during the course of his interrogations. The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fourteenth Amendment makes this provision of the Fifth

Amendment applicable to any criminal case in Hawaii.  See U.S. Const. amend. XIV.

    Procedural safeguards were developed to "secure the privilege against self-incrimination" during custodial interrogations in Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Before any questioning, the person in custody "must be warned that he has a right to remain silent, that any statement he [makes] may be used as evidence against him, and that he has a right to the presence of an attorney."  Id.  A person may waive these rights to make an admissible statement or he may invoke these rights to end the interrogation.  See id.  Here, Petitioner claims that both his right to remain silent and his right to an attorney were violated.  The Court FINDS herein that Petitioner's rights were not violated.

 A.  Right to Remain Silent

   The right to remain silent requires that police interrogators "scrupulously honor" a person's request to end questioning.  Michigan v. Mosley, 423 U.S. 96, 104 (1975).  When deciding whether a request is "scrupulously honored," a court must review "all relevant circumstances."  United States v. Hsu, 852 F.2d 407, 410 (9th Cir. 1988).  However, the most important circumstance for courts to consider is whether police officers, before renewing an interrogation, provide a fresh set of Miranda warnings to a defendant after he invokes his right to

remain silent.  See Grooms v. Keeney, 826 F.2d 883, 886 (9th Cir. 1987) (citing United States v. Heldt, 745 F.2d 1275, 1278 n.5 (9th Cir. 1984)).  If the officers provide a fresh set of Miranda warnings after a defendant invokes his right to remain silent, then a defendant's request has been scrupulously honored.  See Grooms, 826 F.2d at 886.

Here, Petitioner's invocation of his right to remain silent was scrupulously honored because MPD officers provided Petitioner with a fresh set of Miranda warnings at the beginning of each new interrogation. Petitioner first invoked his right at the end of the first interrogation.  Lee then provided him with a fresh set of Miranda warnings at the beginning of the second interrogation. Petitioner again invoked his right by asking to be taken back to his cell.  Finally, Lee provided a third set of Miranda warnings to Petitioner at the beginning of the third interrogation.  This repeated provision of Miranda warnings demonstrates that the MPD scrupulously honored Petitioner's invocation of his right to remain silent.

Although it is not as significant as the fresh warnings, courts have also considered the amount of time that elapsed between interrogations.  See Hsu, 852 F.2d at 410 (citing Mosley, 423 U.S. at 104-06).  The Ninth Circuit has stated that a thirty minute break between interrogations is sufficient to scrupulously honor a request.  See Hsu, 852 F.2d at 410.  Here, Petitioner argues that the ten minute

break between the first and second interrogations was not enough time for a request to be scrupulously honored.  However, the two hour break between the second and third interrogations must also be considered because that is the break after which Petitioner began providing statements.  Taken as a whole, the time MPD officers gave Petitioner between interrogations suggests that they scrupulously honored his requests.

Moreover, courts have also considered whether officers immediately ended the interrogation upon Petitioner's request.  See Mosley, 423 U.S. at 106.  Since Lee and Silva ended Petitioner's first and second interrogations upon request without attempting to coerce him, their actions further suggest that Petitioner's requests were scrupulously honored.[1]

Petitioner's requests were scrupulously honored because MPD officers provided Petitioner with a fresh set of Miranda rights each time after he invoked his right to remain silent.  The time between interrogations and the termination of the interrogations upon Petitioner's request also help support a

---

[1] The only factor considered by the courts that does not weigh in favor of a finding that Petitioner's requests were "scrupulously honored" is whether the interrogations pertained to the same crimes.  See Mosley, 423 U.S. at 106 (holding that a request was scrupulously honored partly because both interrogations were about separate crimes).  However, courts have found that whether "the subsequent interrogation was on the same crime is not important." Heldt, 745 F.2d at 1278 n.5.

finding that his requests were scrupulously honored.  Accordingly, the Court FINDS that Petitioner's right to remain silent was not violated.

    B.  Right to an Attorney

Petitioner's right to an attorney was not violated because he never invoked it.  "At a minimum, invocation of the right to counsel requires 'some statement that reasonably can be construed to be an expression of a desire for the assistance of an attorney.'"  United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005) (quoting Paulino v. Castro, 371 F.3d 1083, 1087 (9th Cir. 2004)).  If the right to an attorney is invoked, then subsequent statements are admissible if counsel is made available or the accused himself initiates further communication.  See Edwards v. Arizona, 451 U.S. 477, 485 (1981).

Petitioner argues that he invoked his right to an attorney because his refusal to sign the waiver expressed his desire for an attorney.[2]  However, a mere refusal to sign a waiver does not constitute an implied assertion of the right to an attorney.  In United States v. Cheely, 36 F.3d 1439 (9th Cir. 1994), a defendant invoked his right to an attorney when he not only refused to sign a waiver, but also told the officers that his attorney had advised him not to talk to them.  Here,

---

[2] Petitioner also advances three additional reasons, but they require the right to an attorney to be invoked first.

10

Petitioner refused to sign a waiver during the first interrogation, but unlike the defendant in Cheely, he did not explicitly mention an attorney in his verbal statement. Petitioner's refusal to sign the waiver cannot, by itself, be reasonably construed as an expression of a desire for the assistance of an attorney. Accordingly, the Court FINDS that Petitioner's right to an attorney was not invoked.

Because Petitioner's right to remain silent and right to an attorney were not violated, the Court FINDS that his Fifth and Fourteenth Amendment rights were not violated and RECOMMENDS that his petition for habeas corpus be DENIED on this ground.

II. IMPOSITION OF EXTENDED-TERM SENTENCES

Petitioner also claims that the imposition of extended-term sentences without findings of fact by a jury was contrary to federal law. Respondents do not oppose this claim. Petitioner's extended-term sentences for Counts II, VI, and X violate Apprendi v. New Jersey, 530 U.S. 466 (2000), because a jury did not find the facts required to extend a sentence under H.R.S. § 706-662(4).[3] "It is unconstitutional for a legislature to remove from the jury the assessment of facts

---

[3] H.R.S. § 706-662(4) allows a sentencing judge to extend the term of a defendant's sentence if it is necessary for the protection of the public.

that increase the prescribed range of penalties to which a criminal defendant is exposed." Id. at 490; see also Kaua v. Frank, 436 F.3d 1057, 1060 (holding that a jury must find the facts required to extend a sentence).  Accordingly, the Court FINDS that Petitioner's extended-term sentences for Counts II, VI, and X violate Apprendi and RECOMMENDS that Petitioner be resentenced accordingly.

## CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that the petition for habeas corpus be GRANTED IN PART and DENIED IN PART and that Petitioner be resentenced.

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: July 18, 2007

Lanosa v. Frank; Civ. No. 07-00115 ACK/BMK; FINDING AND RECOMMENDATION THAT PETITION FOR HABEAS CORPUS BE GRANTED IN PART AND DENIED IN PART